UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HARRISON, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | NO. EDCV 07-1257 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Timothy Harrison filed this action on October 15, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on November 1 and December 13, 2007. On July 23, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

# I.

# PROCEDURAL BACKGROUND

On August 11, 2005, Harrison filed applications for disability insurance benefits and supplemental security income benefits. A.R. 11. The applications were denied initially and upon reconsideration. A.R. 11. The Administrative Law Judge ("ALJ") conducted a hearing on June 4, 2007, at which Harrison testified. A.R. 199-207. On June 25, 2007, the ALJ issued a decision denying benefits. A.R. 8-19. On September 1, 2007, the Appeals Council denied Harrison's request for review. A.R. 4-6.

This lawsuit followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

## III.

## DISCUSSION

### A. Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

### B. The ALJ's Findings

Harrison has a severe impairment of the musculoskeletal system. A.R. 13. Harrison has the residual functional capacity to "occasionally lift and/or carry 20 pounds and frequently 10 pounds. He can stand and/or walk six hours in an eight-hour work day and sit for six hours. He is limited to occasional stair and ramp climbing and precluded from using ladders, ropes or scaffolds; he is limited to occasional balancing, stooping, kneeling, crouching, and crawling; and he can handle frequently bilaterally (sic) and do occasional fingering." A.R. 14. Harris "is capable of performing past relevant work as a table wiper and a kitchen helper." A.R. 18.

### C. Dr. Rooks' Opinion and Harrison's Mental Impairment

Harrison argues the ALJ failed to properly consider the psychiatric evaluation by Dr. Rooks and the severity of Harrison's mental impairment. JS 3, 10.

At Step Two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration

requirement, the severe impairment must have lasted or be expected to last for a continuous period of not fewer than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[1] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and internal quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step Two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and internal quotations omitted). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function,

---

[1] The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 (internal quotations omitted); *Smolen v. Chater*, 80 F.3d at 1273, 1290 (9th Cir. 1996).

without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citations omitted).  The ALJ is also "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Id.* (citations omitted).  The Commissioner does not consider age, education, and work experience.  20 C.F.R. § 404.1520(c).

At Step Two, the ALJ found that Harrison did not have a severe mental impairment.  A.R. 14.  Harrison had "a history of drug use but he is not currently in mental health treatment or taking any psychotropic medications." *Id.*  Because Harrison had "a complete lack of mental health treatment records," a consultative psychiatric examination was ordered.  A.R. 17.  According to the ALJ, Dr. Rooks, the psychiatric consultant, found that Harrison's prognosis depended on his remaining "drug free." *Id.*  Rooks "did not give limitations for the claimant related to his mental diagnosis.  In fact, he noted that from an axis one point of view the claimant's mental state had a mild impact on his ability to work." *Id.*  The ALJ found "no severe mental impairment aside from a long history of polysubstance abuse with no evidence whatsoever of current abstinence.  In fact, the claimant has admitted to the consultative psychiatric examiner of recent drug use and daily alcohol use. [¶] The claimant has no longitudinal history of mental health contact other than for detoxification, no current mental health contact and no use of psychotropic medications.  There is no evidence from any credible source for any reason, mental or otherwise, that any of the 'B' criteria exist."  A.R. 18.  Further, the ALJ stated "that assuming abstinence from selling and using drugs, the claimant is completely unlimited mentally.  Even with ongoing drug and alcohol use there is no reason the claimant could not do unskilled, entry level work that describes his past work as table wiper and a kitchen helper." *Id.*

The ALJ's findings are supported by substantial evidence.  With respect to work limitations, Rooks found that Harrison was "able to understand, carry out,
///

and remember simple instructions, and could perform mildly to moderately detailed and complex tasks from a psychiatric standpoint." A.R. 110.

Rooks also found that "[i]f motivated, he would be able to maintain regular attendance, . . . especially if he does not use substances.[2] He would need to have additional supervision only to ensure that he did the task assigned." *Id.* Although Harrison's ADHD "might interrupt to a degree . . . his ability to complete a normal work day and work week[,] [i]n the past, however, the major interfering factors have been his attitude and his substance use." *Id.* Harrison "is able to accept oral and reasonable written instructions from supervisors, but might not follow them. He is able to interact with co-workers and with the public, but because of his attitudinal problems, he might not be seen as a good co-worker." *Id.* Finally, Harrison "does not have severe symptoms of anger, panic, delusions, nor hallucinations that would further interfere with his ability to work." *Id.*

The portions of Rooks' report Harrison cites in support of his argument are misleading and taken out of context. Harrison notes that Rooks found Harrison "would need to have additional supervision only to ensure that he did the task assigned." JS at 3; A.R. 110. However, this statement is part of Rooks' finding that Harrison "would be able to maintain regular attendance, and perform work activities on a consistent basis, especially if he does not use substances." A.R. 110. Earlier in the report, Rooks stated that Harrison was "capable of completing tasks in a timely manner if he so desires." *Id.* In other words, Rooks found that Harrison can complete tasks if "motivated," and his ability to do so would be enhanced if he did not use substances.

Harrison also notes that Rooks said that Harrison's "ADHD might interrupt to a degree, his ability to complete a normal work day and work week." JS 3;

---

[2] Harrison admitted that, as of the date of the exam, he drank "about two 40 ounce beers per day, which flares up his temper and makes him want to use drugs." A.R. 106. Harrison also admitted he had used cocaine as recently as two months before the exam "because I was upset." A.R. 107.

6

A.R. 110. Again, Harrison omits the context. Rooks stated that "[i]n the past, however, the major interfering factors have been his attitude and his substance use." A.R. 110.

Harrison also notes that Rooks found that Harrison "is able to accept oral and reasonable written instructions from supervisors, but might not follow them." JS 3; A.R. 110. Again, the context shows that Rooks found Harrison might choose not to follow instructions because of "his attitudinal problems." A.R. 110.

Read as a whole, Rooks' report indicates that Harrison suffers, at most, from a mental impairment "that has no more than a minimal effect on [his] ability to work." *Webb*, 433 F.3d at 686-87. The ALJ did not err in his consideration of Rooks' report.

### D.  ALJ's Duty to Develop the Record

It is the claimant's duty to prove he is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). *See* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

In the "Prognosis" section of his report, Rooks stated:

> I cannot make an absolute prognosis concerning his hands, but it is likely that unless he has adequate treatment for the impingement on the ulnar nerve root, he will have persistent if not increasing disability involving his hands, with persistent pain. It is not likely that he will seek adequate

7

treatment. He also could not afford such at the present time, neither psychiatrically nor physically. He needs an adequate evaluation of his neurological status.[3]

A.R. 111.

Harrison argues that the ALJ's duty to develop the record required that he follow up on Rooks' statement about Harrison's neurological status. JS 8. However, as the ALJ noted (A.R. 17), Harrison had surgery to resolve the right ulnar nerve problem on March 8, 2007 – after Rooks examined Harrison – and Harrison's prognosis after surgery was fair to good. A.R. 155-156. Harrison has made no showing that the record is ambiguous or inadequate.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 21, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[3] Rooks is not a neurologist. "[T]he regulations give more weight . . . to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(5)).